ANDREW WRIGHT ET AL *v.* DEAN W. SAMSON ET AL

5-5276                                       455 S. W. 2d 137

Opinion delivered June 22, 1970

*Rose, Barron, Nash, Williamson, Carroll & Clay* and *Hale, Hale, Haynes, Fincher & Hale,* for appellants.

*Allen & Young,* for appellees.

LYLE BROWN, Justice. The appellants are Jimmy C. Harris and Andrew Wright; the appellees are Dean Samson, George Gray, Jim Bass, Harold Archer, Julian Foster, and Old American Life Insurance Company. All

of the named individuals executed two bank notes for a total of $25,000 and in turn delivered the proceeds to Old American. The trial court held that because of subsequent events, appellants had assumed full responsibility (as between the makers) for payment of the notes. Additionally it was held that Old American had relieved itself of its original agreement to furnish funds to liquidate the loans. Harris and Wright appeal.

Old American was in destitute financial straits at the beginning of 1967. A backlog of claims had accumulated because funds were simply not available to pay them. The individual appellants and appellees constituted the executive committee and collectively owned by far the major portion of the company stock. In an effort to save the company it was agreed that the committee, under the leadership of appellants Harris and Wright, would endeavour to borrow $25,000 on a personal note or notes to be signed by all committee members.

Harris's home bank was the Citizens Bank of Carlisle and Wright's bank was the Bank of McCrory. In May 1967 each of those banks was persuaded to make a loan of $12,500 upon personal notes signed by all members of the executive committee in their individual capacities. Both notes were joint and several obligations and payable in monthly installments of $1,000 beginning July 1. The full proceeds of the two loans were delivered to Old American. The company entered the two notes on its records as company liabilities and it was understood that Old American would make the monthly payments. The July and August payments were made according to plan but the company was unable to make further payment. Since appellants Harris and Wright were the leaders in negotiating the loans the lending agencies, on default, called on those two men to see that the notes were liquidated. Old American asserted it was no longer liable and the co-signers, save one, failed to respond to Wright's and Harris's requests for contributions. All the appellees were made parties and the court had before it the question of the

respective liabilities of all parties toward the bank notes.

It was not disputed that initially the transaction created these obligations: (1) As between the banks and the signers of the notes the latter were jointly and severally liable; and (2) as between the signers of the notes and Old American, the latter assumed the obligations as its own. But subsequent events led the trial court to conclude that the obligations had shifted. As to what we shall call the Jim Harris note the court found appellant Harris (a) released Old American; and (b), as to his co-signers, assumed payment of the balance of the note. Harris did in fact pay the balance of the note before filing suit. The same conclusions were reached as to Andrew Wright with respect to the note at Mc-Crory. Wright had not paid the McCrory note at the time he filed his suit.

Our study of the abstract convinces us that the court based the recited conclusions principally on the minutes of a board of directors meeting held on August 24, 1967:

> Andrew Wright agreed to accept 25,000 shares of Class 'A' Old American non-voting stock as settlement in full and to assume personally the amount of the note that he and six others signed as individuals at the Bank of McCrory. This obligation was not made in the name of Old American Life Insurance Company. After further discussion, the same identical action was taken by J. C. Harris on a similar note signed at the Bank of Carlisle by the same individuals and asked for and received his 25,000 share certificate of Class 'A' Old American non-voting stock.

We find substantial evidence to support the trial court's conclusion that Old American was released from its obligation. It was explained at the August 24 meeting that I. L. Vaughn had been persuaded to buy substantial stock in Old American and assume the presidency; that a condition precedent to his entry into the

company was that three notes (including these two) had to be removed from the financial statement; and Mr. Vaughn testified that the signers of the notes, except Andrew Wright, were present and agreed that Old American's obligation would be terminated in consideration of the transfer of the stock in the names of Harris and Wright. Appellant Wright, although absent from the meeting, had executed a written memorandum which could be interpreted as showing his agreement to relieve Old American.

We do not agree with the trial court's conclusion that the appellants, by taking the shares of stock mentioned in the minutes, assumed payment of the notes as between them and their co-makers. Since it is undisputed that appellees Samson, Gray, Bass, Archer, and Foster executed the joint and several obligations, they had the burden of proving that they were thereafter discharged from any liability. See *Vandeventer* v. *Davis*, 92 Ark. 604, 123 S. W. 766 (1909). The evidence showed convincingly that the minutes we have recited were incorrect insofar as they reflected that appellants personally assumed payment of the notes to the exclusion of their co-makers.

James E. Bass acted as reporter for the August 24 meeting. He said that the contents of the minutes we have recited were dictated to him by Dean Samson; that appellant Wright did not attend the meeting; and that it was "altogether possible" that appellant Harris was not in the room when the dictation was given. Appellee George Gray testified that he considered himself liable on the notes. Appellee Dr. Julian Foster, according to the undisputed evidence, paid appellant Harris a proportionate share of the note at Carlisle and agreed to pay appellant Wright on the other note if the Bank of McCrory would execute a release. Appellee Bass also testified that he regarded himself as liable for a proportionate payment. There was testimony that appellee Samson had promised, but failed, to make contribution. Appellees Samson and Archer did not testify.

The only disinterested witness as to the August 24 meeting was I. L. Vaughn; he had no interest in the contest between the makers of the two notes. He was invited to the meeting because he was planning to purchase a substantial interest in Old American and had agreed to advance $15,000 which would be available for the payment of pressing claims. He corroborated appellants in their testimony that they accepted the Class A stock merely as trustees for the individuals who signed the notes. Vaughn's testimony on this point is abstracted as follows:

> The stock transaction as to the issuance to Mr. Harris and Mr. Wright was discussed at that meeting including the possibility of issuing seven different certificates [there being seven signees on the notes], and it was agreed that it would be better to hold it in one certificate and since these men were the primary men on the notes, they were responsible to their banks and they knew their banker, that the stock was issued in their names and that they in turn would be the trustees for the stock and as it was sold down the road, would help liquidate the amount of the note.

That portion of the judgment which recites that Harris and Wright assumed full responsibility, as between the makers, for retiring the notes is reversed. As to the Class A stock issued in the names of appellants, each holds the same in trust for the benefit of all signers of the notes. The trial court, after modifying its judgment accordingly, will enter such additional findings and judgment as will finalize the litigation.

Reversed and remanded.

BYRD, J., not participating.